UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MACHELLE MATTHEWS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| | * | |
| -vs- | * | CIVIL ACTION |
| | * | File NO.:_____ |
| | * | |
| CLAYTON COUNTY PUBLIC | * | **JURY TRIAL DEMANDED** |
| SCHOOLS, DR. PAM | * | |
| ADAMSON, MARK CHRISTMAS, | * | |
| JESSEE GOREE, OPHELIA | * | |
| BURROUGHS, MARY BAKER, | * | |
| JUDY HOHNSON, ALIEKA ANDERSON, | * | |
| AND BENJAMIE STRAKER, | * | |
| Individually and in their | * | |
| Capacity as Board of Education | * | |
| Members for the Clayton County | * | |
| Schools. | * | |

## COMPLAINT FOR DAMAGES

COMES NOW MACHELLE MATTHEWS, Plaintiff in the above styled action and files her Complaint for Damages against the above named Defendants and shows the Court as follows:

## <u>INTRODUCTION</u>

**1.**

This is an action for race discrimination, sex discrimination and a violation of the Equal Pay Act based on violations of Plaintiff's federally protected civil rights as codified in 42 U.S.C. §2000e *et seq* (Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1001) 42 U.S.C. §1981 and the Equal Pay Act of 1963, as amended, 29 USC 206(d).

**2.**

Plaintiff filed a timely charge with the Atlanta office of the United States Equal Employment Opportunity Commission ("EEOC"). Plaintiff received a Notice of Right to Sue from the EEOC within the last ninety (90) days and has complied with all other conditions precedent to the institution of this lawsuit.

**JURISDICTION**

**3.**

This Court has jurisdiction pursuant to 28 U.S.C. §1331, 28 U.S.C. § 1332(a), 28 U.S.C. §1343, and 42 U.S.C. §2000e-5 (f) (3)

The amount in controversy exceeds $75,000.00, excluding interest and cost.

## 4.

This Court has personal jurisdiction over all Defendants in that all Defendants are residents of the Northern District of Georgia and Defendant Clayton County School System does business and has its principal place of business in the Northern District of Georgia, Georgia.

## VENUE

## 5.

Defendant is located within the Northern District of Georgia. All actions alleged herein occurred within the Atlanta Division of the Northern District of Georgia. Venue in this district is proper for Defendant under 28 U.S.C. §1391(b) and (c), 42 U.S.C.

§2000e-5 (f) (3), and Rule 3.1B (1) (b), Local Rules of the Northern District of Georgia.

**PARTIES**

6.

Plaintiff is a long standing administrator with the Clayton County Public Schools for some seventeen (17) years. Plaintiff ascended to her current position as an Assistant Superintendent in 2014. As an administrator Plaintiff has no tenure status and has no right to a Fair Dismissal Act hearing and has no obligation to exhaust any administrative remedies before bringing this action.

7.

The Clayton County Schools is a subdivision of the State of Georgia and operates the public school system for Clayton County, Georgia. The Clayton County Schools is subject to the jurisdiction of this Court and may be served with summons and complaint by serving Dr. Pam Adamson, Chair of the Board of the Clayton County

4

Schools at 1058 Fifth Avenue, Jonesboro, Clayton County, Georgia.

8.

Mark Christmas is a member of the Clayton County Schools Board of Education and is a resident of Clayton County, Georgia and is subject to the jurisdiction of this Court. Mark Christmas may be served at the address of the Clayton County Schools, located at 1058 Fifth Avenue, Jonesboro, Clayton County, Georgia, or such other place where he may be located in Clayton County, Georgia.

9.

Jessie Goree is a member of the Clayton County Schools Board of Education and is a resident of Clayton County, Georgia and is subject to the jurisdiction of this Court. Jessie Goree may be served at the address of the Clayton County Schools, located at 1058 Fifth Avenue, Jonesboro, Clayton County, Georgia, or such other place where she may be located in Clayton County, Georgia.

10.

Ophelia Burroughs is a member of the Clayton County Schools Board of Education and is a resident of Clayton County, Georgia and is subject to the jurisdiction of this Court. Ophelia Burroughs may be served at the address of the Clayton County Schools, located at 1058 Fifth Avenue, Jonesboro, Clayton County, Georgia, or such other place where she may be located in Clayton County, Georgia.

11.

Mary Baker is a member of the Clayton County Schools Board of Education and is a resident of Clayton County, Georgia and is subject to the jurisdiction of this Court. Mary Baker may be served at the address of the Clayton County Schools, located at 1058 Fifth Avenue, Jonesboro, Clayton County, Georgia, or such other place where she may be located in Clayton County, Georgia.

12.

Judy Johnson is a member of the Clayton County Schools Board of Education and is a resident of Clayton County, Georgia and is subject to the jurisdiction of this Court. Judy Johnson may be served at the address of the Clayton County Schools, located at 1058 Fifth Avenue, Jonesboro, Clayton County, Georgia, or such other place where she may be located in Clayton County, Georgia.

13.

Alieka Anderson is a member of the Clayton County Schools Board of Education and is a resident of Clayton County, Georgia and is subject to the jurisdiction of this Court. Alieka Anderson may be served at the address of the Clayton County Schools, located at 1058 Fifth Avenue, Jonesboro, Clayton County, Georgia, or such other place where she may be located in Clayton County, Georgia.

14.

Benjamin Straker is a member of the Clayton County Schools Board of Education and is a resident of Clayton County, Georgia and is subject to the jurisdiction of this Court. Benjamin Straker may be served at the address of the Clayton County Schools, located at 1058 Fifth Avenue, Jonesboro, Clayton County, Georgia, or such other place where he may be located in Clayton County, Georgia.

15.

Luvenia Jackson [not named in this action as a Defendant] is listed only in her capacity as the former Superintendent and as the party designated at all relevant times to carry out the policies and directives of the Clayton County Schools. Since she is not a named Defendant and not a party to this litigation, no service is necessary for Luvenia Jackson.

## STATEMENT OF FACTS

16.

Plaintiff was employed by the Clayton County Schools ("CCSS") during the school year 1999-2000. Plaintiff's first position was as an Assistant Principal at Forest Park High School and her last position was as an Assistant Superintendent, working under the leadership of Luvenia Jackson as Superintendent. Plaintiff's direct supervisor was Deputy Superintendent Jackie Hubbert.

17.

When elevated to the position of Assistant Superintendent [2014-2015] Plaintiff was assigned to the division of schools most in need in the CCSS. During the 2015-2016 school year, in an effort to provide needed assistance to schools that were not improving and not meeting expectations of the State of Georgia and CCSS, Luvenia Jackson ("Superintendent") assigned Plaintiff to a different set of schools.

18.

In an effort to make improvements in her new set of schools Plaintiff evaluated each and every administrator under her direct supervision and suggested ways in which schools would and could improve. Ostensibly, some under her supervision were not pleased with her style or suggested improvements and complained to members of the CCSS Board of Education.

19.

Plaintiff has received proficient to exemplary evaluations for each and every evaluation period since being employed by CCSS. Moreover, Plaintiff was elected as the principal of the year for 2009 by CCSS and recognized by the State of Georgia in 2010 as the National Title I Distinguish School Award [only two schools are recognized in the State of Georgia each year].

20.

Plaintiff was employed with CCSS for some seventeen (17) years and worked in the administration of nine (9) superintendents. While serving in each administration, Plaintiff has been recommended each year for renewal of her contract. Most of the current board members were CCSS board members when she was renewed for continued employment.

21.

Plaintiff was evaluated on her performance for the 2015-2016 school year and recommended for renewal of her contract by Superintendent Jackson for the school year 2016-2017. Plaintiff's name was submitted, in routine form, by Superintendent Jackson, along with the names of all personnel who were recommended for renewal of their employment contract for the school year 2016-2017.

22.

At the February 1, 2016 Board meeting, when Plaintiff's contract was submitted for renewal, the

Board convened an executive session to discuss personnel matters, as is allowed by the Georgia Open Meetings Act.

23.

During the Executive Session Plaintiff was again recommended for renewal and the Board rejected the Superintendent's request to have Plaintiff's contract renewed. Upon information and belief, as was confirmed in an Open Record's Act request, Plaintiff was the first administrator whose contract was non-renewed by CCSS after a recommendation was made by the Superintended to renew a contract.

24.

Plaintiff was advised verbally by the Human Resources Officer on February 3, 2016 that her contract had been non-renewed.

25.

On February 8, 2016 counsel for Plaintiff sent CCSS a letter, as required by O.C.G.A. § 20-2-211(b), requesting a written explanation as to why Plaintiff's

contract was not renewed. The Superintendent responded on behalf of the Board on March 4, 2016 stating that "[t]he Clayton County Board of Education did not renew your employment as an assistant superintendent because it had lost faith in your judgment and leadership as well as for work performance concerns".

26.

The Board did not hold a discussion nor did it receive any evidence from any source regarding the leadership skills of Plaintiff during the regular board meeting. Moreover, no Board member has ever evaluated the leadership skills of Plaintiff [nor can they] to make a decision regarding the leadership skills of Plaintiff. All evaluations and reviews as to Plaintiff's job performance come from the Deputy Superintendent and/or the Superintendent, who made an informed decision after evaluating Plaintiff to recommend renewal of Plaintiff's contract.

27.

Plaintiff knows of no review, audit or other process, that was conducted by the Deputy Superintendent, Superintendent or Human Resources Department that shows her leadership skills to be deficient. Additionally, in the absence of such information Plaintiff shows that no empirical data or information exists upon which a finding of a "loss in faith of her judgment" can or could be made without receipt of such unfounded information from a source outside the confines of the executive session.

28.

At the conclusion of the executive session, the Board convened its regular open meeting and voted the "[a]pproval of the Administrative Re-election List, less the name of Plaintiff and Clarence Cox, as discussed in executive session".

29.

During the open meeting the Board never received evidence from any source that would confirm or affirm

its reason or rational for the non-renewal of Plaintiff's contract.

30.

Each named Defendant executed and signed, under oath, the Clayton County Board of Education Affidavit, as required by O.C.G.A. § 15-14-4(a), stating that the subject matter of the meeting or closed portion of the meeting thereof was devoted to matters within the exceptions provide by law and identified the specific relevant exception.

31.

At the close of the February 1, 2016 Board meeting each named Defendant executed the required Affidavit, alleging that the only matters discussed were pursuant to the exception stated in O.C.G.A. § 50-14-3(4) and O.C.G.A. § 50-14-3(6). O.C.G.A. § 50-14-3(6) exception relates to discussion or deliberation upon the appointment, employment, compensation, hiring, disciplinary action or dismissal, or periodic evaluation or rating of a public officer or employee.

32.

Upon information and belief [as confirmed by the results of an Open Records Act request] Plaintiff does not have on file an evaluation for her performance for the school year 2015-2016. Moreover, Plaintiff did not receive her 2015-2016 evaluation at the time of her nonrenewal. As such, Plaintiff has never been evaluated in her position as an Assistant Superintendent for CCSS that would be available for the Defendants to review.

33.

All performance and leadership assessments have been or were performed by the Deputy Superintendent and/or the Superintendent and no Defendant or Board member has the authority to perform independent evaluations or reviews of district personnel other than the Superintendent or other assigned superiors.

34.

Upon information and belief the Superintendent submitted no evaluations or reviews of Plaintiff as an Assistant Superintendent [none existed] at the February

1, 2016 Board Meeting and, based on the decision of the Superintendent, Plaintiff was recommended for renewal.

35.

Although allowed to meet in executive session to discuss personnel matter, as stated above, the exception does not apply to "the receipt of evidence or when hearing argument on personnel matters, including whether to impose disciplinary action or dismiss a public officer or employee or when considering or discussing matters of policy regarding the employment or hiring practices of the agency." There was, nor could there be, such a discussion as to Plaintiff's performance without the Board having been presented with evidence to support such a finding outside the Board meeting. Moreover, there could be no finding of a loss of confidence without supporting evidence to make such a finding and none was presented at the regular Board meeting. To support such a finding the Defendants, in executive session, would have had to receive evidence to sustain its rationale for non-

renewal outside the confines of a board meeting; which is not allowed to occur by the Open and Public Meetings Act.

36.

Minutes of the closed session are required to be kept, which will support Plaintiff's contention that there was a violation of Chapter 14 of the Open and Public Meetings Act. The Chair of the Board specifically violated the provisions of O.C.G.A. § 50-14-4(2) when she did not rule any discussion outside the permitted scope of the executive session relative to Plaintiff's contract. The violation occurred when there was an attempt to receive evidence as stated above.

37.

In spite of the reason [loss of confidence] for the alleged non-renewal of Plaintiff's contract, the Defendants and CCSS continued Plaintiff in her current position with her same duties, *inter alia*, evaluating and rehiring principals to supervise schools in the

CCSS. This action is evidence that the allegation that the Defendants lost confidence in Plaintiff's leadership ability was no more than a subterfuge to cover Defendants disparate treatment of Plaintiff based on her sex and race.

38.

The disparate treatment and sexual discrimination perpetuated against Plaintiff is supported by Plaintiff having been falsely accused of impropriety with a fellow male employee when, in fact, no such impropriety occurred. The matter was investigated and Plaintiff was found not to have committed such conduct.

39.

On the other hand, Plaintiff's co-worker [a male] who held and holds the same position as Plaintiff was accused of sexual impropriety with a co-worker and was renewed by CCSS whereas Plaintiff was not renewed.

40.

In addition to a violation of Plaintiff's contract rights based on sexual discrimination and disparate

treatment. Plaintiff was paid less that her male counterpart, all in violation of the Equal Pay Act.

41.

Plaintiff timely filed a charge with the EEOC and received her Right to Sue notice.

42.

Defendants Jessie Goree and Defendant Alieka Anderson, individually and jointly, have made disparaging remarks in a public setting which are actionable as slanderous *per se*. That is, Defendants Jessie Goree and Alieka Anderson made charges against Plaintiff in reference to her trade, office, or profession, calculated to injure Plaintiff therein.

**COUNT ONE**
**TITLE VII – RACE AND SEX DISCRIMINATION**

43.

Plaintiff incorporates herein by reference paragraphs one through forty two of Plaintiff's Complaint.

44.

Defendants engaged in intentional race and sex discrimination by failing to renew Plaintiff's contract, a well-qualified black female, from her existing and funded position, based on her race and sex by retaining a similarly situated male employee who was no more qualified to retain his position than was Plaintiff.

45.

Defendant CCSS and its agents, in concert with each other, misrepresented that the position was non-renewed in that the "Board" has lost faith in Plaintiff and for her lack of performance in her position when in fact this representation was a subterfuge to remove Plaintiff and keep her male counterpart who was not performing up to par and Plaintiff having been assigned his schools due to his poor performance in his position.

46.

The Superintendent, as she had done in the past, recommended Plaintiff for renewal and, upon information and belief, she has never had an administrative renewal rejected by the Board. The Superintendent was not aware of any deficiency in the performance of Plaintiff and no such information was ever conveyed to a Board member.

47.

Plaintiff shows that her work performance was outstanding and she had never received a complaint from a Board member during her employment. Moreover, Defendant Board members opined that "they never wanted to employ Plaintiff in her position from the beginning of her employment as an administrator"; yet she was renewed without difficulty.

48.

Defendant's conduct violated 42 U.S.C. §2000e et seq., Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

49.

Defendants' discriminatory conduct, in violation of Title VII and Section 1981, has caused Plaintiff to suffer a loss of pay, benefits, ability to secure adequate employment, prestige and cost.

50.

Defendants' intentional and illegal actions caused Plaintiff to suffer mental and emotional distress entitling her to compensatory and punitive damages pursuant to 42 U.S.C. § 1981a(b). Plaintiff is entitled to additional relief as authorized by section 706(g) of the Civil Rights Act of 1964 [43 U.S.C. § 2000e-5(g).

**COUNT TWO**

**CLAIM FOR LIBEL AND SLANDER AGAINST DEFENDANTS**

52.

Plaintiff incorporates herein by reference paragraphs one through fifty one of Plaintiff's Complaint.

52.

Defendant Jessie Goree and Defendant Alieka Anderson represented to others in a public forum wherein they, individually and jointly, accused Plaintiff of criminal conduct during the performance of her duties as an administrator with CCSS. Specifically Defendant Jessie Goree accused Plaintiff of misappropriating funds from one of her schools when, in fact Defendant Jessie Goree very well know that this allegation was incorrect, false and was done with the malicious intent of harming Plaintiff and her reputation as an education administrator.

53.

Defendant Alieka Anderson, represented in a public forum that Plaintiff was guilty of a debasing act with

the intent of including her form society; that is, she was having affairs and sexual relations with some unknown 'men' during her tenure as an administrator with CCSS such that she was not fit be an administrator with CCSS. Said statement was made in a vile attempt to harm Plaintiff in her reputation, trade, profession and was made to injure Plaintiff as an educator and education administrator.

54.

The actions of Defendant Jessie Goree and Defendant Alieka Anderson caused Plaintiff nominal and special damages in a sum to proven at trial. Moreover, the actions of these Defendants were vile, willful, wanton and both should be subjected to paying punitive damages to Plaintiff.

**COUNT THREE**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

55.

Plaintiff incorporates herein by reference paragraphs one through fifty four one of Plaintiff's Complaint.

56.

The conduct of Defendants, individually and collectively in non-renewing Plaintiff's contract for no apparent reason and with a nefarious and vindictive motive were extreme acts and exemplified outrageous conduct sufficient to support a cause of action for intentional infliction of emotional distress. The conduct of Defendants was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and is regarded as atrocious, and utterly intolerable in a civilized community.

57.

Defendants' very well knew that their conduct and actions against Plaintiff were without cause and were done intentionally. In support of her position of such conduct being outrageous Plaintiff shows that the

accrediting agency for secondary schools admonished Defendants that it was a violation of the standards for secondary schools to interfere with employment matters in that such matters were within the sole discretion of the Superintendent. Yet, Board members ignored this directive, falsified information, misrepresented facts as to Plaintiff's performance as a subterfuge for her termination, treated her in a disparate manner than other similarly situated male employees based on her sex.

58.

Plaintiff is entitled to an award of punitive damages based on the wanton and willful conduct of Defendants.

## PRAYER FOR RELIEF

59.

WHEREFORE, Plaintiff prays for a judgment as follows;

(a) that the Court order Defendant SSCC to reinstate Plaintiff or to pay Plaintiff full and fair front pay in lieu of reinstatement;

(b) that the Court grant Plaintiff all back pay, with interest;

(c) that the Court grant Plaintiff compensatory damages for the pain and suffering, humiliation, and emotional distress Defendants' caused Plaintiff by Defendant's illegal conduct;

(d) that the Court grant Plaintiff punitive damages for Defendant's intentional, malicious, and recklessly indifferent violations of Plaintiff's federally protected civil rights;

(e) that the Court grant Plaintiff all employment benefits she would have enjoyed had she not been discriminated against;

(f) that the Court grant Plaintiff expenses of litigation, including reasonable attorneys' fees, pursuant to Title VII;

(g) that the Court grant Plaintiff a trial by a
jury of her peers;

(h) that the Court grant permanent and injunctive
relief prohibiting Defendant from engaging in
further discriminatory and retaliatory conduct;

(i) That Plaintiff be awarded nominal, special and
punitive damages, including attorney's fees
against Defendants Jessie Goree and Alieka
Anderson; and

(j) that the Court grant Plaintiff any other and
further relief this Court deems just and
appropriate.

Respectfully submitted,
**LAWSON & THORNTON, P.C.**
*/s/ George O. Lawson, Jr.*
George O. Lawson, Jr.
Georgia Bar No. 440200

LAWSON & THORNTON, P.C.
Waterstone Tower
4751 Best Road
Suite 208
Atlanta, GA 30337
(404)344-4401
(404)763-0071
geolawson@ltlawfirm.net